The next case is case number 161285, Premier Capital v. Crawford. Thank you. May it please the court, Emily Shanahan for Richard Crawford. In this case, Mr. Crawford requests that the court reverse the bankruptcy court's denial of his discharge. Exceptions to discharge for bankruptcy are supposed to be narrowly construed. Accordingly, the burden falls on the party opposing the discharge to prove each element of its claim for the exception to the discharge. In this case, Mr. Crawford's position is that Premier Capital, the appellee and the plaintiff below, failed in a fundamental way to carry its burden of proof with respect to each of the claims that the bankruptcy court found were the basis for denying Mr. Crawford's discharge. In this case, Premier painted with a very broad brush and failed to clearly identify and articulate what its claims were. And the result was this failure of proof. As a result, there are a number of errors in the decisions, including the merits as to the false oath claim against Mr. Crawford, which was based on the cash balance plan. And there, there was a misapplication of the burden shifting framework that applies under Section 727A4A. And secondly, as to the concealment claim against Mr. Crawford, based on cars that were owned by Mr. Crawford's wife, Cynthia Crawford, there was a misapplication of the continuous concealment doctrine, which, by the way it was applied by the bankruptcy court, eliminates the one-year look-back period that should otherwise apply in this bankruptcy case. There were also some procedural errors in terms of the bankruptcy court finding that Mr. Crawford had impliedly consented to the trial of either of these issues in this case. Turning to the merits of the false oath claim based on the cash balance plan in this case, there were five elements that Premier was required to prove before there could be any shift of the burden to Mr. Crawford to show that he had not committed the offense charged. Premier needed to establish that there was a statement under oath that the statement was false, that the statement was made knowingly with fraudulent intent, and that it was material to the bankruptcy case. And in this case, just by way of a little context, the way that the cash balance plan came up during the course of the trial, this occurred on the second day of the trial, Premier sought to introduce into evidence a collection of quarterly 401K statements. Now, Premier's counsel acknowledged at trial that these statements were originally part of a trial exhibit that was designated as documents, you know, to the effect of documents produced by Wells Fargo in response to a subpoena. Can I ask you practically, the 401K aspect here that was managed by Wells Fargo, was there a single statement that contained both the 401K component and the CBP component into a single statement from Wells Fargo? Yes, sir. In terms of what was submitted as an exhibit at trial, I believe it was exhibit 847, it's one statement. Right. And Mr. Crawford reported the total balance on that single statement that included both the 401K and the CBP. Is that correct? That's correct. What he omitted was a separate mention that that included the CBP. That's correct, Your Honor. Okay. The bankruptcy court found and the district court affirmed on that point that these schedules accurately reflected the combined balance in the 401K plan  Is there any difference in how the bankruptcy court deals with a 401K portion and the CBP portion? In terms of whether there's going to be credit or protection to it, that's part of the point here, Your Honor. We have no idea what the terms of the cash balance plan are absent what appears on the quarterly statements that were admitted into evidence because Premier never put into evidence what are the terms of the plan? What is the nature of the plan? Does it have different credit or protection status than the 401K plan? So how do we know then whether that omission of mentioning the CBP while disclosing the asset but without mentioning the CBP is material below? How do we know that? Your Honor, we would agree with you wholeheartedly that that is one of the fundamental problems of materiality is to assess whether there is something, the asset or the matter would have a non-trivial impact on the bankruptcy estate or whether it relates to or bears a relationship to the debtor's financial transactions. Hang on one second. When he made the listing on the schedule, was it listed as something that was exempt from breach? Your Honor, the way it was listed on the schedule initially, Schedule B in terms of identifying what the personal property of the debtor is, there it's just listed as 401K with Wells Fargo and the balance is given at that time. So as a 401K, is it reachable? I don't believe it is, Your Honor, but I'm not certain. So is that the problem? If it's just a cash balance, then that portion would be reachable? And by lumping it together, he's removing it from the reach? Your Honor, we have no context or ability to know whether there is any distinction. As it appears on the quarterly statement, it shows a 401K balance and it says a cash balance account and then a summary that says retirement summary, and it adds those two balances together. And this is what we take the position was Premier's burden to show what are the terms of the cash balance plan, and absent that information to know that maybe there are some different protections or accessibility for creditors to that portion of the plan, that we have no way to be able to know materiality, and that was its fundamental failure. This First Circuit case law that says that listing the accounts themselves is a requirement and that failure to list the account itself is a basis for false oaths, so that, in fact, if you had listed it separate, the Bankruptcy Court could have dealt with this, is what the logic of those cases are. The burden actually was on you to distinguish, even though you listed the asset, by not listing the CBP, the Bankruptcy Court, nor the debtors in this case, the creditors in this case, had the ability to make that challenge of what may be excludable or what not, and therefore the evil, the false oath part was in your not listing the account itself as a CBP account. Well, a couple of issues, Your Honor. I mean, the question in terms of, I think there's two parts to that, falsity and materiality. The question 12 that was asked, specifically asked for interest in IRA, ERISA, KEOG, or other pension or profit sharing plans give particulars. So as to the first instance as to falsity, absent any idea of what this cash balance plan is, there could be the question of whether it even needed to be disclosed in response to that question. Again, we don't know because Premier never gave the court any basis to be able to decide what is this plan that we're dealing with. And secondly, on the falsity point, if the intent of the question is to extract from the debtor what are your retirement assets, that at Wells Fargo I have $148,000 in retirement assets, the disclosure answers that question. It does omit, it doesn't say Wells Fargo, excuse me, 401K and cash balance plan, but the asset is still there. And that then goes to what would be the added benefits or the added, the nontrivial effect on the bankruptcy estate from a materiality perspective. I thought the logic of our cases was that it would be the knowledge of an account that I could then trace to see its history. And I don't know what it would show. But I can't do that until I know the account exists. Yes, Your Honor. So why doesn't that person, why doesn't that make it definitionally material? I thought that's what our case, we're saying there's many things in the world that might be immaterial, but all accounts, financial accounts are just, we treat them as material because it's the kind of thing that once I know there is an account, it gives me some insight into your financial history that I can trace and I can never begin that process until I know it. If that's the case, then what's material was the thing you omitted was a cash account, a cash balance account. And so then I don't have to additionally show when I've done my whole history of it, Well, I think here there's not the same kind of concern. I know Premier has raised this concern of this is just going to encourage people not to list anything. But one case I'm thinking of in particular in terms of like Ingram-Muscola is one of the cases where there was a closed bank account that was not disclosed on the debtor's schedules. But there the question on the schedules made a closed or open bank account material to the debtor's disclosure because it asked for all accounts within the past, disclose all accounts within the past two years. So there a closed account had it been closed at the time of the filing but open in that two-year period, yes, I could see that information would be material, but I don't see Doesn't that just go to falsity rather than materiality in the example you just gave? I think in Muscola, I think it probably went to both falsity and materiality in terms of what was the effect because it's not the case of it just there's some, and Premier has taken that position of it's, well, even if it's a worthless asset, you have to disclose it. But that wasn't the value issue as I understood it in Muscola. It was there was a question just for the purpose that you said, Your Honor, of being able to trace the debtor's financial. But if we can see that there's, and I know you don't, but if you can see that this was a false statement, that's because we're reading the question here to be just like the question in Muscola. Yes, if there's So then it's just an all-fours of Muscola. But also to the case of falsity is not enough to be able to establish that that has made a false oath. There is an added requirement of materiality. That's what I'm saying. But it was satisfied in Muscola because there was a question asking for you to disclose the accounts. Yes. So if we read this question as having asked you to disclose the accounts, wouldn't this also be material because you didn't disclose it? I think, no, because I still think it requires Premier to have established in the first instance the question or the element of materiality. Let me ask you a different way. If it was asked, just like it was asked for in Muscola, how is this account any less material than the account in Muscola? Because the asset here is actually disclosed. So I think that is a big difference. The words cash balance plan are omitted, but the value of the asset itself is there. The value is zero in Muscola. But again, that was because it was relevant to the question of was there some kind of transfer of the asset potentially in that two-year period. So value wasn't there, but the asset itself here is acknowledged. And Mr. Crawford testified his understanding was that the cash balance plan was part of the 401k plan. And so to the extent, you know, he didn't see a distinction between the two plans. It was he gets one statement, the retirement assets that he has at 401, excuse me, at Wells Fargo are reported on that statement, and then they're disclosed here on his schedules. And, you know, this goes somewhat to the issue of, if I may kind of skip to the issue of implied consent as to the trial of this case. There was never at any time in Premier's complaints in the pretrial memo, in its pretrial submission, that the cash balance account or any problem with the 401k disclosure on the schedules. This came up in the second day of trial. What Premier acknowledged at the time of trial was had been a voluminous trial exhibit that was suddenly broken down into component parts and started asking questions about the 401k statement. The implied consent is that this is the first time that you've objected to it, that while you point to some objections made to evidentiary rulings in the bankruptcy court, it really was on the basis of duplication. It never did the lawyer in the bankruptcy court, either on the second day of trial when the evidence came in, in any post-trial matters at all, ever raise the objection that there was no consent to bringing this. Largely because I don't think people at trial realized this was going to be an issue in case. You addressed it post-trial. You addressed it in the papers post-trial. You knew it was an issue without objection. I think the papers post-trial, respectfully, show that there wasn't clear, if I may answer, wasn't clear what theory Premier was proceeding on as to the cash balance plan because one of the other ways in which Premier argued the issue of the cash balance plan in the 401k, part of it was, one, they were saying that the balance in the cash balance plan wasn't disclosed at all, as well as the name of the plan, but also they were taking the position, it seemed at trial, that the amount of the 401k disclosure was improper because it wasn't the value as of the date of filing or as of the date the schedules were prepared. So if there's no other further questions. Lots of questions about the cards, but we'll have to recommend the papers. Thank you. Do you want to answer? No. Okay. I'm fine. Thank you. May it please the Court, good afternoon, Your Honors. Doug Lawrence for Appellee Plaintiff, Premier Capital LLC. This case is the result of a voluminous and thorough 51-page decision by the bankruptcy court judge below who conducted a three-day trial on these very issues. The bankruptcy court judge was in the best position to evaluate the credibility of Mr. Crawford, and continuously throughout the decision, the bankruptcy court judge says that he did not find Mr. Crawford credible in many, many respects. And in fact, turning to one of the last topics that was just found, despite that lack of credibility, the bankruptcy court rejected six out of Premier Capital's eight requests that certain issues had been tried by implied consent. As you know, implied consent, the standard for review, is abuse of discretion. And although attorneys for Mr. Crawford at the trial stage did lodge objections saying that this case had not been properly pleaded, that they did not have notice, and specifically lodged objections under Rule 15b-2 that they had not consented to the trial of it, they did not do so for either the cash balance plan issue or the free antique automobiles issue. So I'm a little on the loss about even discussing it because those objections weren't raised at trial. Instead, Mr. Crawford's counsel cross-examined Mr. Crawford about it, engaged Mr. Crawford on the merits, mentioned it in closing arguments, and in post-trial... The counsel said they engaged it, but they didn't know exactly what theory Premier was proceeding on. To the extent that they did not know which theory that Premier was proceeding on... So if you don't know the theory, you're not going to have a very effective engagement of the issue. According to Mr. Crawford's own papers is that he did not learn about the cash balance plan being subject to a false oath claim until the second day of trial. So he did know the theory, at least after the second day of trial, and with the antique automobiles it was six days prior to the beginning of trial. I do see your point, however, and I guess to the extent that you don't find that Mr. Crawford's counsel had severe knowledge regarding the theory for either of those assets... I was going to say, rather than objecting and saying this was not pleaded in a complaint, we're a little unsure of the theory, this isn't going to come in under 15b-2, they just engaged in the merits even if they kind of weren't sure, did not preserve the appellate record very well. Moving on to the substance, what evidence is there in the record that the bankruptcy court judge could rely on that shows that the omission of the phrase cash balance plan, while listing the asset contained in there, that is the value that was contained in the combined accounts, what evidence is there that that's a material falsehood? The threshold for materiality in this context is very, very low. Really all it has to do is bear some type of relationship to the estate. And I think it somewhat oversimplifies the issue to say that Mr. Crawford simply omitted the words cash balance plan on his Schedule B. In fact, what he needed to do was take 401k plan, put the balance there, then write cash balance plan and put the balance there. So it would have been a little more involved than that, rather than just take the combined balance of the two separate plans and say that this has been a complete and full disclosure. But the same question asks Mr. Anahan, what is the distinction between the two that's relevant to a bankruptcy analysis? I think Judge Thompson asked about the differing exemptions or whatnot. What's the distinction between those two that make this material to a determination by either the creditor or the bankruptcy court? Well, first I would have to clarify the burden of proof. Obviously it's Premier who carries the burden of proof to say that a false oath has been made under the schedules or the SOFA or whatnot. However, it is not Premier's burden to make sure that all the assets of the debtor are properly listed. That's the debtor's burden in filing these with the court. But you still have to prove that it was false and an element of falsehood is materiality. Why is this distinction? The asset was listed. The nomenclature, the name for a portion of it wasn't listed. Why is that? What evidence is there in the record that that's material? Even a little bit. Well, I would especially disagree that the asset was listed. I would say the value at the time of the asset was listed. I'll take that amendment. Go with that. Okay. And by way of analogy, if I had multiple accounts at Bank of America, multiple checking accounts, say, and I had one of my own name, one of my spouse, and I owned a small business, and I just listed the total value of them, I do not think that would comply with the bankruptcy code and full and fair disclosure of all of my assets at Bank of America. And that's the way I see these things. The cash balance plan and the 401K plan are two separate plans, and it's really not up to the creditors to show that they could go after it or that even if it were exempt, that somehow the debtor is excused from listing it. It's the debtor's responsibility to list all of those assets. But if you – Okay. If I'm mis- No, you're not at all. You're not at all. If you're listing the asset value but you're not drawing that distinction, who cares? And I guess that's my way of asking about materiality. So what? That a mistake, assuming in the light most favorable to the debtor here, a mistake was made. Clearly one could assume that a mistake to hide an asset didn't exist because they listed the full value of the asset. They listed the $148,000, but they didn't draw it as two distinctions. And I guess what I'm asking is, is there any evidence in the record that says that that omission, that failure to list it separated out twice, has any materiality to the bankruptcy? I don't know bankruptcy law well enough to know if that is meaningful at all. And that's what I'm asking. I understand Judge Barron's questions going to the issue of listing of accounts and putting debtors on notice. I get that. But on the issue of materiality of drawing out that distinction when you list the asset, you're not hiding the total value. Is there any evidence in the record that that distinction is material? Yes, Your Honor. Under First Circuit case law, something is material if it's pertinent to the discovery of assets. It's an extremely low threshold. How is this pertinent to the discovery of an asset if they listed the full value? Well, no creditor would know the existence of this separate cash balance plan. They would just be under the misimpression that Mr. Crawford's 401K plan, the value of that was increased by about $30,000. So it's back to this notion of traceability. If it's a separate account, you can figure out if money was removed from the account shortly before the bankruptcy file. Is that the idea? That's one of them, yes. All of these assets need to be listed so that the creditors can choose which ones they're going to proceed with, which ones they're not. There just needs to be a full and fair disclosure. The way you're arguing it, you're arguing it in such a way that you're saying listing equals or not listing equals materiality. And so we're trying to figure out if that's really what you mean. Is the threshold so low that the failure to list in and of itself is material? It's fairly low. I cite some cases in my brief. And the quickest way I know how to explain it is whether it's pertinent to the discovery of assets by the bankruptcy trustee, the creditors, and the court. But at least with respect to a financial account, is that going to hold an asset independently? Yes. Whenever that's not listed, it's material? Yes. That's what you think our case law suggests, and the reason is because that would be something you could inquire into and trace and figure out the full financial picture of the person. Exactly, Your Honor. It's a separate plan. And then if we don't adopt that rule, we're going to run into some tricky issues about how to distinguish which accounts have to be listed and whatnot. I do think there is somewhat of a slippery slope argument, which I usually don't like to lead with, but we do mention that in our papers as well. But here, on the 401k, well, the retirement statement, there's two separate plans, a 401k plan and a cash balance plan. And then there was a total at the very bottom. Really, they just happen to be listed on the same sheet of paper. Wells Fargo, Mr. Crawford's employer, could have sent different statements for each of those two separate plans. It did not. The fact that they happen to be listed on a single piece of paper, in my mind, does not excuse him from failing to disclose it on a Schedule B. Okay. Do you want to talk about cars? Does anyone want to talk about cars? Cars, Nelson. Okay. I'm going to do this in a short amount of time. Certainly, the cars, the bankruptcy court judge found that Mr. Crawford had a beneficial ownership interest in the cars, that they were bought for him, that he paid for them, that he used them, that he testified that he was a car nut, that he borrowed against them, and even though the loan was a joint obligation, he was the one who made the payments on the loan, and that in all aspects, he was the one who enjoyed and used these cars, and it was not Mrs. Crawford. At no time did Mr. Crawford ever reveal the existence of these cars to his creditors. In fact, he concealed them and arranged to have them titled in Mrs. Crawford's name, specifically to defeat his creditors, who had been going after him for about, I think according to the bankruptcy court, about 24 years at that point. So what the bankruptcy court judge found was all of the records and elements were there for concealing these cars from his creditors, especially Premier, and that in so doing, that that was a separate basis for a denial of the discharge, and again, you don't really, you only need one basis for a denial of the discharge, and the bankruptcy court engaged in an extremely thorough analysis, it almost denied him a discharge on his deferred compensation plan, but it did not, but it did deny him a discharge on two separate grounds in a very, very fact-intensive case that took place over the course of three separate days. And the bankruptcy court found that Mr. Crawford concealed these cars under the continuing concealment doctrine after a thorough and extensive analysis of that doctrine, and that by failing to disclose the fact that these cars, his cars, except in legal name only, did in fact exist in the year prior to his filing for bankruptcy, constituted the requisite acts and conduct that is required for continuing concealment to apply under the law of this circuit and the laws of other circuits. Thank you, Councillor. Thanks. Thank you.